ACCEPTED
01-15-00718-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/19/2015 4:13:23 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-1500718-CV

_____

IN THE
FIRST COURT OF APPEALS
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

10/19/2015 4:13:23 PM

CHRISTOPHER A. PRINE
Clerk

_____

**Humble Surgical Hospital L.L.C. (incorrectly named as Humble Surgical Hospital Services, L.L.C., Humble Surgical Holdings, L.L.C., Houston Humble Surgical, P.L.L.C., Humble Spine Surgery, P.L.L.C.)**

**Appellant,**

**v.**

**Christy L. Traynor**

**Appellee.**

_____

On Appeal from Cause No. 1044724
in the County Court of Law No. 2, Harris County, Texas

_____

### APPELLANT'S BRIEF

_____

Joshua Anderson
SBN: 24027198
Chastiti N. Horne
SBN: 24007385
HORNE ROTA MOOS, LLP
2777 Allen Parkway, Suite 1200
Houston, Texas 77019
(713) 333-4500
(713) 333-4600 Facsimile

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

In accordance with TEX. R. APP. P. 38.1(a), the following is a complete list of all parties to this appeal:

**Appellant: Humble Surgical Hospital L.L.C. (incorrectly named as Humble Surgical Hospital Services, L.L.C., Humble Surgical Holdings, L.L.C., Houston Humble Surgical, P.L.L.C., Humble Spine Surgery, P.L.L.C.)**

**Counsel for Appellant:**

> Mr. Joshua Anderson – Appellate Counsel
> Ms. Chastiti N. Horne – Trial and Appellate Counsel
> HORNE ROTA MOOS, LLP
> 2777 Allen Parkway, Suite 1200
> Houston, Texas 77019
> (713) 333-4500
> (713) 333-4600 – Fax

**Appellee:    Christy L. Traynor**

**Counsel for Appellee:**

> Jacqueline M. Houlette
> SBN: 00787718
> HOULETTE & GRAY, P.L.L.C.
> 440 Louisiana Street, Suite 900
> Houston, Texas 77002
> (713) 236-7740
> (713) 583-3010 – Fax

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL ......................................................... ii

TABLE OF CONTENTS ................................................................................... iii

INDEX OF AUTHORITIES .............................................................................. v

REQUEST FOR ORAL ARGUMENT .................................................................. ix

STATEMENT OF THE CASE .............................................................................. x

ISSUES PRESENTED ......................................................................................... xi

STATEMENT OF FACTS .................................................................................... 2

SUMMARY OF THE ARGUMENT .................................................................... 7

STANDARD OF REVIEW .................................................................................. 8

ARGUMENT ....................................................................................................... 8

I)      The Enactment of the Medical Liability and Insurance Improvement
        Act ......................................................................................................... 8

II)     Section 74.351's Expert Report Requirements ............................................. 10

        A)      Neither expert set forth the requisite qualifications to opine on
                HSH's standard of care and purported breach thereof ....................... 12

        B)      Appellee's amended expert reports are conclusory as to HSH's
                standard of care and alleged breach thereof. ..................................... 16

                1)      Conclusory opinions as to negligent hiring, supervision
                        and retention ................................................................... 16

2)    Because vicarious liability does not apply in this context, Appellee cannot rely on Nurse Bunyard's alleged breaches against HSH .................................................19

3)    *Certified EMS, Inc. v. Potts* is distinguishable .........................23

C)    Appellee's amended expert reports are conclusory as to causation ...................................................................................24

CONCLUSION AND PRAYER ...........................................................................26

CERTIFICATE OF COMPLIANCE....................................................................27

CERTIFICATE OF SERVICE .............................................................................28

APPENDIX............................................................................................................29

# INDEX OF AUTHORITIES

**<u>Cases:</u>**                                                                                              **<u>Page</u>**

*Al-Lahiq v. Rosemond*,
 No. 14-13-00158-CV, 2013 WL 5969720
 (Tex. App.—Houston [14th Dist.] Nov. 7, 2013, no pet.) ......................24, 25

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*,
 46 S.W.3d 873 (Tex. 2001) ...........................................................8-11, 16-18

*Bala v. Maxwell*,
 909 S.W.2d 889 (Tex. 1995) ....................................................................8, 9

*Baylor All Saints Med. Ctr. v. Martin*,
 340 S.W.3d 529 (Tex. App.—Fort Worth 2011, no pet.) ......................17, 18

*Baylor Medical Center at Waxahachie v. Wallace*,
 278 S.W.3d 552 (Tex. App.—Dallas 2009, no pet.).. ...................................14

*Buck v. Blum*,
 130 S.W.3d 285
 (Tex. App.—Houston [14th Dist.] 2010, pet. denied)............................ 20-22

*Certified EMS, Inc. v. Potts*,
 392 S.W.3d 625 (Tex. 2013) ...............................................................23, 24

*Gannon v. Wyche*,
 321 S.W.3d 881
 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).............................8, 11

*Gardner v. U.S. Imaging, Inc.*,
 274 S.W.3d 669 (Tex. 2008)  .............................................................19, 20

*Garland Cmty. Hosp. v. Rose*,
 156 S.W.3d 541 (Tex. 2004) ....................................................................9

*Group v. Vicento*,
   164 S.W.3d 724 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) .........8

*Horizon/CMS Healthcare Corp. v. Auld*,
   34 S.W.3d 887 (Tex. 2000) ...................................................................9

*Jelinek v. Casas*,
   38 S.W.3d 526 (Tex. 2010) .................................................................25

*Jones v. Ark-La-Tex Visiting Nurses, Inc.*,
   128 S.W.3d 393 (Tex. App.—Texarkana 2004, no pet.) ...........................15

*In re Jorden*,
   249 S.W.3d 416 (Tex. 2008) (orig. proceeding) .............................................9

*Kelly v. Stone*,
   898 S.W.2d 924 (Tex. App.—Eastland 1995, writ denied) ......................... 21

*Larson v. Downing*,
   197 S.W.3d 303 (Tex. 2006) ...........................................................8

*Loaisiga v. Cerda*,
   379 S.W.3d 248 (Tex. 2012) ...................................................................24

*MacGregor Med. Ass'n v. Campbell*,
   985 S.W.2d 38 (Tex. 1998) ...................................................................10

*Mackey v. U.P. Enters, Inc.*,
   935 S.W.2d 446 (Tex. App.—Tyler 1996, no writ) ...............................20, 21

*Memorial Hermann Healthcare Sys. v. Burrell*,
   230 S.W.3d 755 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ..............12

*Maxwell v. Seifert*,
   237 S.W.3d 423 (Tex. App.—Houston [14th Dist.] 2007, no pet.).. ............19

*Murphy v. Russell*,
   167 S.W.3d 835 (Tex. 2005) ...................................................................10

*NCED Mental Health, Inc. v. Kidd,*
    214 S.W.3d 28 (Tex. App.—El Paso 2006, no pet.) .....................................21

*Patel v. Williams,*
    237 S.W.3d 901 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ..............11

*Shirley v. U.S.,*
    No. 4:03-CV-1385-Y, 2006 WL 708651 (N.D. Tex. May 21, 2006) ..........21

*Simonson v. Keppard,*
    225 S.W.3d 868 (Tex. App.—Dallas 2007, no pet.) .....................................15

*Sylvester v. Dallas Fire Ins. Co.,*
    No. 04-97-00754-CV, 1998 WL 130341
    (Tex. App.—San Antonio Mar. 25, 1998, no pet.).......................................20

*Tawa v. Gentry,*
    No. 01-12-00407-CV, 2013 WL 1694869
    (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.)........................ 11-16

*Tenet Hospitals Ltd. v. Love,*
    347 S.W.3d 743 (Tex. App.—El Paso 2011, no pet.) ...................................24

*Texas & P. Ry. Co. v. Hagenloh,*
    247 S.W.2d 236 (Tex. 1952) .......................................................................20

**Statutes**:

TEX. CIV. PRAC. & REM. CODE § 74.351 ........................................................................ x

TEX. CIV. PRAC. & REM. CODE § 74.351(a) ................................................................ 10

TEX. CIV. PRAC. & REM. CODE § 74.351(b) ................................................................ 10

TEX. CIV. PRAC. & REM. CODE § 74.351(c) ................................................................ 10

TEX. CIV. PRAC. & REM. CODE § 74.351(*l*) ................................................................ 10

TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(B) ...................................................... 12

TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) ...................................................... 11, 19

TEX. CIV. PRAC. & REM. CODE § 74.402(b) .......................................................... 12, 13

TEX. CIV. PRAC. & REM. CODE § 74.402(c) ................................................................ 13

**Rules:**

TEX. R. APP. P. 9.4 ........................................................................................................ 27

TEX. R. APP. P. 38.1(a) .................................................................................................. ii

TEX. R. APP. P. 38.1(f) .................................................................................................. 2

TEX. R. APP. P. 39.1 ...................................................................................................... ix

**Miscellaneous:**

HOUSE COMM. ON CIV. PRAC., Bill Analysis, Tex. H.B. 971,
        74th Leg., R.S. (1995) ........................................................................................ 8

## <u>REQUEST FOR ORAL ARGUMENT</u>

Appellant requests oral argument.  *See* TEX. R. APP. P. 39.1.

# STATEMENT OF THE CASE

| | |
|---|---|
| *Nature of the Case and Parties:* | Direct and vicarious liability claims brought against Appellant by Christy L. Traynor for injuries she sustained when she was allegedly sexually assaulted during her recuperation from back surgery by Kelly Joe Bunyard, one of Appellant's employees. |
| *Trial Court:* | The Honorable Theresa Chang, County Court of Law No. 2, Harris County, Texas |
| *Trial Court's Disposition:* | Denied Appellant's motion to dismiss pursuant to TEX. CIV. PRAC. & REM. CODE. ANN. § 74.351, which contended that Appellee failed to file compliant expert reports, despite being given 30 days to cure deficiencies (Apx. Tab 1 & 2). |

## ISSUES PRESENTED

I.    Whether the trial court erred in refusing to dismiss this action as required by Chapter 74 of the Texas Civil Practice & Remedies Code after Appellee failed to serve compliant amended expert reports, despite being given an opportunity to cure her deficient expert reports, because:

    a.    neither expert established that they were qualified to opine on Appellant's standard of care;

    b.    the amended expert reports failed to provide specific information as to what policies and procedures should have been in place as it relates to Appellant's hiring, supervision and retention of employees;

    c.    the amended expert reports' reliance on Nurse Bunyard's alleged breach of the standard of care is misplaced as to Appellant because vicarious liability is not applicable to allegations of sexual assault as a matter of law; and

    d.    the amended expert reports failed to provide specific information as to how Appellant's lack of adequate policies and procedures was a substantial factor in Appellee's injuries.

NO. 01-1500718-CV

_____

IN THE
FIRST COURT OF APPEALS
HOUSTON, TEXAS

_____

**Humble Surgical Hospital L.L.C. (incorrectly named as Humble Surgical
Hospital Services, L.L.C., Humble Surgical Holdings, L.L.C., Houston
Humble Surgical, P.L.L.C., Humble Spine Surgery, P.L.L.C.)**

**Appellant,**

**v.**

**Christy L. Traynor**

**Appellee.**

_____

On Appeal from Cause No. 1044724
in the County Court of Law No. 2, Harris County, Texas

_____

**APPELLANT'S BRIEF**

_____

TO THE HONORABLE FIRST COURT OF APPEALS:

Appellant, Humble Surgical Hospital L.L.C. (incorrectly named as Humble
Surgical Hospital Services, L.L.C., Humble Surgical Holdings, L.L.C., Houston
Humble Surgical, P.L.L.C., Humble Spine Surgery, P.L.L.C.) ("HSH"), submits
this brief demonstrating that this Court should reverse the trial court's order
denying its motion to dismiss and render a judgment of dismissal with prejudice as
required by Chapter 74 of the Civil Practice & Remedies Code, including an
assessment of attorneys' fees or, alternatively, remand with instructions to the trial

court to assess statutory attorneys' fees and then to enter a judgment of dismissal with prejudice.

## STATEMENT OF FACTS

The following facts are "pertinent to the issues or points presented." TEX. R. APP. P. 38.1(f).

This lawsuit was brought on March 6, 2014 by Christy L. Traynor ("Appellee") against HSH and Kelly Joe Bunyard ("Nurse Bunyard") (CR 4).[1] The petition contains little in the way of factual allegations (CR 6). However, as Appellee makes clear in her later filings, "[t]his case arises out of Defendant Nurse Kelly Bunyard's sexual molestation of [Appellee] while she was a patient recovering from back surgery at [HSH]" (CR 53). She further claims that Nurse Bunyard was an employee of HSH at the time. (*Id.*). As for her causes of action, Appellee alleges:

> During the course of that care and treatment, Defendants and their respective agents, ostensible agents, agents by estoppels and/or employees, engaged in several acts and omission constituting negligence, and such acts and omissions, among others, are as follows:
>
> (a) In failing to properly hire and retain the nursing care provided to Plaintiff;

---

[1] Citations to the Clerk's Record are abbreviated "CR" followed by the corresponding page number. Similarly, citations to the Reporter's Record are abbreviated "RR" followed by the corresponding page number.

2

(b) In failing to properly supervise the nursing care provided to Plaintiff;

(c) In failing to monitor the nursing care provided to Plaintiff; and

(d) In failing to properly treat the Plaintiff.

Defendants are vicariously liable for the acts and omissions of their respective employees and agents who were employed by or in agency or contractual relationship with them at all times material hereto and Plaintiff hereby invokes the doctrines of agency, ostensible agency, and/or agency by estoppel with respect to those relationships.

(CR 6-7). Thus, Appellee asserts a direct negligence cause of action against HSH for negligent, hiring, supervision, and retention and also purports to hold HSH vicariously liable for the actions of Nurse Bunyard.

After Appellee served her original expert report, HSH objected and moved to dismiss for failure to serve a compliant report on September 15, 2014 (CR 172-73). Appellee requested, and the trial court granted, a 30-day extension of time for Appellee to cure the alleged deficiencies in Appellee's expert reports (CR 34).

Appellee then filed and served amended expert reports from Priscilla Ray, M.D. and Cathy L. Miller, RN, Ph.D. (CR 78). Dr. Ray provided her curriculum vitae, as well as amended expert reports consisting of a January 12, 2015 report and a December 22, 2014 Forensic Psychiatric Examination (CR 79-107). Beginning with the Forensic Psychiatric Examination, it is precisely that (CR 87). Dr. Ray recounts Appellee's history beginning from childhood and ultimately renders a diagnosis of post traumatic stress disorder (CR 87-105). The incident

made the basis of this suit is only discussed as a "stressor" supporting the PTSD diagnosis (CR 101). There is no discussion of HSH's purported standard of care. In her January 12th report, Dr. Ray was asked to respond to the following questions:

> Question # 1)  Did the behavior of the staff at Humble Surgical Hospital staff [sic] fall below the standard of care in the treatment of Ms. Traynor?
>
> Question # 2)  If the answer to Question # 1 is affirmative, what psychiatric illness, if any, did Ms. Traynor suffer as a result of actions which fell below the standard of care?
>
> Question # 3)  If the answer to Question # 2 is affirmative, what is Ms. Traynor's prognosis in regard to the illness?

(CR 83). She responded as follows:

> Answer # 1:  Yes, Mr. Bunyard was a nurse in the Humble Surgical Hospital caring for Ms. Traynor after her surgery. The Texas Nursing Board substantiated charges that Mr. Bunyard "inappropriately" touched Ms. Traynor, which falls below the standard of behavior and care owed a patient. Please see my attached Forensic Psychiatric Examination report for more details.
>
> Answer # 2:  It is my opinion that, due to the behavior of Mr. Bunyard described above, Ms. Traynor suffers from the following psychiatric illness:
>
> Post Traumatic Stress Disorder, improved but not resolved
>
> She meets the following criteria of Post Traumatic Stress Disorder from the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM 5):
>
> > A, B1-5, C1-2, D2, D4-6, E3-6, F, G, H

4

Information about the above criteria in general and as applied to Ms. Traynor is contained in my expanded report entitled "Forensic Psychiatric Examination" (attached).

Answer # 3:    Her prognosis is fair.   Please see my attached Forensic Psychiatric Examination report for expanded discussion of the prognostic factors which both improve and limit her prognosis.

(CR 85).

Additionally, Appellee provided an expert report and curriculum vitae from Dr. Miller (CR 108-165).  The majority of Dr. Miller's report is dedicated to Nurse Bunyard's purported violations of the standards of care (CR 113-17).  However, after terming HSH "the organizations," she offered the following opinions:

1. The organizations were negligent in adequately screening applicants prior to hire as evidenced by lack of a pre-hire comprehensive background check.

2. The organizations were negligent in adequately training staff on sexual misconduct, reporting, and prevention as evidenced by a lack of employee handbook or other training materials prior to the date of incident.

3. The organizations failed to have policy and procedures in place to determine appropriate patient assignments.

4. The organization failed to have adequate policy and procedures in place for the supervision of nursing care as evidenced by no record of charge nurse or house supervisor rounding on Ms. Traynor.

5. The organization failed to have adequate policy and procedures in place for the monitoring of telemetry patients, as evidenced by Ms. Traynor being "off monitor" for 30 minutes or more.  The removal of Ms. Traynor from the telemetry monitor coinciding with the timing of the nurse's hourly rounding documentation as evidenced

5

by a) no rhythm strip in medical record for the time and b) "0" showing on the vital signs system generated vital signs record.

(CR 116-17). She summarizes her opinions as "[t]he lack of employee screening, training, and organization policy and procedures to protect patients from employees with dishonorable intentions vicariously places the organization in a position of liability for Ms. Traynor's treatment, exposure to sexual misconduct and assault, and increased risk of costly adverse mental and physical health outcomes" (CR 117).

HSH then filed its Motion to Dismiss and Objections Pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code for Failure to File an Adequate Expert Report (CR 14). In its motion, HSH argued that neither expert was qualified and that the expert reports were deficient as to all three required elements—standard of care, breach, and proximate cause (*Id.*). On August 3, 2015, the trial court overruled HSH's objections to Appellee's expert reports and denied its motion to dismiss (CR 166).[2]

This interlocutory appeal ensued (CR 168).

---

[2] Both parties objected to the timeliness of each other's respective filings; *i.e.*, HSH objected to the timeliness of Appellee's amended expert reports, and Appellee objected to the timeliness of HSH's motion to dismiss. However, at the hearing, both parties agreed to waive their respective timeliness objections and requested the trial court to consider HSH's motion to dismiss solely on the merits (RR 4-5).

## SUMMARY OF THE ARGUMENT

Despite being given an opportunity to cure the defects in her original expert reports, Appellee failed to serve compliant expert reports. Appellee's proffered experts have not established the requisite qualifications to opine on HSH's standard of care. Moreover, the amended reports are conclusory as to all three required elements—standard of care, breach and proximate cause.

As to Appellee's direct negligence theory, the only opinions offered are Dr. Miller's conclusory assertions that HSH lacked "adequate" policies and procedures for hiring, supervision and retention. Dr. Miller failed define what would be "adequate" and thus, failed to advise HSH what care was expected. As a result, she did not provide a fair summary of HSH's purported standard of care and breach.

As to her vicarious liability theory, Texas law is clear that an employer cannot be held vicariously liable for the alleged sexual assaults of its employees, as these actions are outside the course and scope of employment. As Appellee's vicarious liability theory has no basis in the law, expert reports which rely exclusively on this erroneous legal conclusion do not satisfy the purpose of Chapter 74's expert report requirement—providing a basis for the trial court to conclude the claim has merit.

Finally, the expert reports fail to explain how HSH's actions proximately caused Appellee's injuries. In particular, the reports do not explain how HSH's alleged hiring, supervision and retention policies were a substantial factor in Appellee's injuries. Without doing so, she failed to provide a "fair summary" of proximate cause.

The trial court's order denying HSH's motion to dismiss should be reversed.

## STANDARD OF REVIEW

A trial court's denial of a motion to dismiss under Texas Civil Practice and Remedies Code section 74.351 is reviewed for abuse of discretion. *See Gannon v. Wyche*, 321 S.W.3d 881, 885 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 875 (Tex. 2001); *Group v. Vicento*, 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Id.* (citing *Larson v. Downing*, 197 S.W.3d 303, 304-05 (Tex. 2006)).

## ARGUMENT

I)   **THE ENACTMENT OF THE MEDICAL LIABILITY AND INSURANCE IMPROVEMENT ACT.**

The Texas Legislature enacted the Medical Liability and Insurance Improvement Act ("MLIIA") "to alleviate a perceived medical malpractice insurance crisis in the state of Texas." *Bala v. Maxwell*, 909 S.W.2d 889, 892

(Tex. 1995). The Legislature determined that an increase in the frequency and severity of health care liability claims negatively impacted the availability and affordability of health care in Texas. *See Garland Cmty. Hosp. v. Rose*, 156 S.W.3d 541, 543 (Tex. 2004); *see also Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 893 (Tex. 2000) ("The underlying theory was that a medical-liability insurer could offer lower malpractice rates, which, in turn, would increase the availability of medical care for Texans."). Thus, the MLIIA operates, in part, to curtail frivolous claims. *See Palacios*, 46 S.W.3d at 878.

Chapter 74 (and its predecessors) ensured this purpose by placing several restrictions on a health care liability claimant before proceeding with a claim. *Garland Cmty. Hosp.*, 156 S.W.3d at 543. One of these restrictions is a requirement that an expert report be filed in order to proceed with a health care liability claim. *See In re Jorden*, 249 S.W.3d 416, 420 (Tex. 2008) (orig. proceeding) ("to decrease costs associated with frivolous suits, expert reports are now required"). The Legislature determined that failing to file a timely expert report, or filing a report that did not constitute a good-faith effort to comply with the statutory definition of an expert report, "means that the claim is either frivolous, or at best has been brought prematurely." *Palacios*, 46 S.W.3d at 878 (citing HOUSE COMM. ON CIV. PRAC., Bill Analysis, Tex. H.B. 971, 74th Leg., R.S. (1995)).

9

As the Texas Supreme Court later explained, "the Legislature intended health care liability claims to be scrutinized by an expert or experts *before the suit can proceed*." *Murphy v. Russell*, 167 S.W.3d 835, 838 (Tex. 2005) (emphasis added) (citing *MacGregor Med. Ass'n v. Campbell*, 985 S.W.2d 38, 41 (Tex. 1998)).

## II. SECTION 74.351'S EXPERT REPORT REQUIREMENTS.

Section 74.351 of the Texas Civil Practice and Remedies Code states: "In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." TEX. CIV. PRAC. & REM. CODE § 74.351(a). Failure to comply with this directive mandates that a claimant's suit be dismissed with prejudice and the affected health care provider be awarded its reasonable attorney's fees and costs of court. *See id.* at § 74.351(b). However, if the claimant has served a timely report, a trial court can dismiss the suit if the report does not represent a good-faith effort to comply with the statutory requirements. *See id*. at § 74.351(l). In the event that a trial court finds the report to be a good-faith effort, but nevertheless deficient, one thirty-day extension to cure the deficiencies may be granted. *See id*. at § 74.351(c).

10

As for what constitutes a compliant expert report, the statute defines an "expert report" as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6). Texas courts have further elaborated on what constitutes a "fair summary" and thus, constitutes a "good-faith effort." *See, e.g., Palacios*, 46 S.W.3d at 878-79.

"To constitute a good-faith effort, the report must provide enough information to fulfill two purposes: (1) inform the defendant of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit." *See Tawa v. Gentry*, No. 01-12-00407-CV, 2013 WL 1694869, at *2 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (citing *Palacios*, 46 S.W.3d at 879); *see also Patel v. Williams*, 237 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2007, no pet.). While a report need not marshal all of a plaintiff's proof, it must include the expert's opinions on the three statutory elements: standard of care, breach, and causation. *See id.* A report which merely states the expert's conclusions as to the standard of care, breach, and causation does not fulfill these two purposes. *See id.* Instead, the

11

expert must affirmatively explain the basis for her statement and link her conclusions to the facts. *See id.* Finally, a trial court cannot draw any inferences, but must rely exclusively on the information contained within the four corners of the report. *See Gannon*, 321 S.W.3d at 897.

In sum, section 74.351 requires the trial court to serve a gate-keeper function in order to prevent medical negligence causes of actions from proceeding unless the claimant has made a good-faith effort to demonstrate that at least one expert believes that a breach of the applicable standard of care caused the claimed injury. *See Tawa*, 2013 WL 1694869, at *2.

### A. Neither expert set forth the requisite qualifications to opine on HSH's standard of care and purported breach thereof.

Before addressing the reports' contents, it was Appellee's initial burden to establish that the reports were authored by qualified experts. *See Memorial Hermann Healthcare Sys. v. Burrell*, 230 S.W.3d 755, 757 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Section 74.351(r)(5)(B) states that an expert who purports to establish the standard of care applicable to a non-physician health care provider must meet the qualifications of Section 74.402. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)(B). In pertinent part, section 74.402 states:

> (b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of whether the health care provider departed from accepted standards of care ***only if*** the person:

(1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant health care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

(2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; ***and***

(3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

TEX. CIV. PRAC. & REM. CODE § 74.402(b) (emphasis added).

Subpart (c) then further elaborates on the third prong of subpart (b). It states:

(c) In determining whether a witness is qualified on the basis of training or experience, the court shall consider whether, at the time the claim arose or at the time the testimony is given, the witness:

(1) is certified by a licensing agency of one or more states of the United States or a national professional certifying agency, or has other substantial training or experience, in the area of health care relevant to the claim; and

(2) is actively practicing health care in rendering health care services relevant to the claim.

TEX. CIV. PRAC. & REM. CODE § 74.402(c). Finally, these qualifications must be evident within the four corners of the expert's report and curriculum vitae. *See Tawa*, 2013 WL 1694869, at *3.

In *Tawa*, this Court thoroughly detailed when a physician is qualified to opine on the standard of care for a non-physician and—by extension—the facility

13

that employs her. *See* 2013 WL 1694869, at \*12-14. "[T]he courts of appeals have consistently required a physician-expert proffering an opinion on the applicable standard of care of a nonphysician to affirmatively demonstrate experience and familiarity with the standard of care for the nonphysician's field." *Id*. at \*13. As further noted:

> When a physician fails to state in his expert report or affidavit that he has knowledge of the standard of care *applicable to the specific types of health care providers involved in the claim*, or that he has ever worked with or supervised *the specific types of health care providers involved in the claim*, the physician is not qualified on the issue of whether the health care provider departed from the accepted standards of care for health care providers.

*Id*. at \*13 (quoting *Baylor Med. Center at Waxahachie v. Wallace*, 278 S.W.3d 552, 558 (Tex. App.—Dallas 2009, no pet.)) (emphasis added).

"Neither the text of section 74.402 nor the cases interpreting it allow us to make" an assumption that familiarity with similar patients equates to familiarity with the standard of care applicable to the health care provider in question. *Tawa*, 2013 WL 1694869, at \*14. In other words, it is familiarity with the care expected of the particular health care provider—not familiarity with how the expert would care for a similar patient in their field—which determines whether that expert is qualified.

Dr. Ray did not establish that she is familiar with the standard of care of a health care provider such as HSH. While she is a psychiatrist with experience

14

treating patients such as Appellee, she has not shown within the four corners of her report or curriculum vitae that she has any experience or expertise with surgical hospitals or its staff. This is particularly true with regard to the direct negligence theories asserted against HSH. Accordingly, she is not qualified to opine on HSH's standard of care or alleged breach thereof. *See id.*; *see also Simonson v. Keppard*, 225 S.W.3d 868, 872 (Tex. App.—Dallas 2007, no pet.) (holding that expert was not qualified because he did not state how he had knowledge of the standard of care applicable to nurse practitioners or that he had worked with or supervised nurse practitioners); *Jones v. Ark-La-Tex Visiting Nurses, Inc.*, 128 S.W.3d 393, 397 (Tex. App.—Texarkana 2004, no pet.) (holding that expert did not explain how his experience qualified him to give the standard of care for nurses monitoring a patient in a home healthcare setting or that he was an expert on appropriate nursing care).

Dr. Miller is likewise unqualified as to Appellee's allegations against HSH. Again, Appellee alleges that HSH was negligent in its hiring, supervision and retention as well as vicariously liable for the acts of Nurse Bunyard. Despite her expertise as a nurse, Dr. Miller has not shown the requisite qualifications for opining on HSH's breach of administrative tasks such as hiring, supervision and retention. Without first establishing that Dr. Ray and Dr. Miller are qualified to opine on HSH's standard of care, Appellee failed in her initial burden.

**B.** **Appellee's amended expert reports are conclusory as to HSH's standard of care and alleged breach thereof.**

Again, Appellee alleges two causes of action: that HSH was directly negligent in its hiring, supervision and retention of Nurse Bunyard and that HSH is vicariously liable for the acts of Nurse Bunyard. Appellee's amended expert reports are conclusory as to the first and without legal justification as to the second. Accordingly, Appellee's amended expert reports did not provide "a basis for the trial court to conclude that the claims have merit." *Tawa*, 2013 WL 1694869, at *2.

**1.** **Conclusory opinions as to negligent hiring, supervision and retention.**

Any analysis of what is required in an expert report to sufficiently identify the standard of care, and any breach thereof, must begin with the Texas Supreme Court's seminal opinion in *Palacios*. There, the court held that the standard of care for a hospital is what an ordinarily prudent hospital would do under the same circumstances. *See Palacios*, 46 S.W.3d at 880. "Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently." *Id.* Simply put, the expert report must set out what care was expected, but not given. *See id.*

16

With this in mind, the *Palacios* court then turned to the proffered standard of care before it—that precautions to prevent Palacios' fall were not properly used. *See id*. Ultimately, the court concluded that this was simply not a statement of a standard of care. *See id*. "Neither the trial court nor American Transitional would be able to determine from this conclusory statement if Dr. Bontke believes that the standard of care required American Transitional to have monitored Palacios more closely, restrained him more securely, or done something else entirely." *Palacios*, 46 S.W.3d at 880. When an expert report's conclusory statements do not put the defendant or the trial court on notice of the conduct complained of, a trial court has no discretion but to conclude that the report does not represent a good faith effort to provide a fair summary of the standard of care and how it was breached. *See id*.

In an opinion that is particularly applicable here, the Fort Worth Court of Appeals considered an expert report which purported to set forth a hospital's standard of care for preventing sexual assaults in a patient's room. *See Baylor All Saints Med. Ctr. v. Martin*, 340 S.W.3d 529, 533-34 (Tex. App.—Fort Worth 2011, no pet.). The expert report stated that a hospital should have "policies in place to safeguard patients from assault, including employing a sufficient number of security personal [sic] to insure that no unauthorized persons assault patients and training staff to identify persons not authorized to enter patients' rooms and prevent them from doing so[.]" *Id*. at 534. The court held that these opinions were

17

conclusory, as they do not establish what specific policies and safeguards should have been in place. *See id.* "For example, the 'policies in place to safeguard patients' are not identified; neither are the number of security personnel required nor the training the staff should have received regarding identifying unauthorized persons." *Id.* Because "even a fair summary must set out what care was expected," this expert report failed to fulfill the required specificity. *See id.*

Dr. Ray does not even attempt to offer an opinion on HSH's alleged negligent hiring, supervision and retention. Thus, this task falls exclusively to Dr. Miller. Dr. Miller addresses this with conclusory statements. She states that HSH (1) failed to "adequately screen[] applicants," (2) failed to "adequately train[] staff on sexual misconduct, reporting, and prevention," (3) "failed to have policy and procedures in place to determine appropriate patient assignments," (4) "failed to have adequate policy and procedures in place for the supervision of nursing care," and (5) "failed to have adequate policy and procedures in place for the monitoring of telemetry patients" (CR 116-17).

Much like the standards of care offered in *Palacios* and *Martin*, these are not statements of a standard of care; *i.e.*, what care was expected, yet not given. There is no explanation for what hiring or training procedures would have been "adequate" (CR 116-17). There is likewise no explanation of what policies and procedures would be "adequate" (*Id.*). Instead, she offers general and abstract

18

pronouncements, devoid of any specifics. HSH and this Court are left to guess as to what precisely would have satisfied Dr. Miller's purported standards. As a result, questions like the ones the *Palacios* and *Martin* courts raised over precisely how a provider meets its standard of care are left unanswered. Accordingly, Appellee's amended expert reports failed to provide a fair summary of her direct negligence claim against HSH. The trial court's ruling should be reversed.

### 2. Because vicarious liability does not apply in this context, Appellee cannot rely on Nurse Bunyard's alleged breaches against HSH.

The bulk of both Dr. Ray[3] and Dr. Miller's reports address Nurse Bunyard's purported breach of his standard of care by allegedly sexually assaulting Appellee. However, Appellee cannot attempt to bootstrap Mr. Bunyard's alleged breach of his standard of care to HSH.

While there is case law holding that "[w]hen a party's alleged health care liability is purely vicarious, a report that adequately implicates the actions of that party's agents or employees is sufficient," *Gardner v. U.S. Imaging, Inc.*, 274

---

[3] Dr. Ray's Forensic Psychiatric Examination is nothing more than a medical record memorializing Dr. Ray's diagnosis of Appellee's psychiatric condition. Nothing in this report addresses any of the elements required to be addressed by an expert report; namely, standard of care, breach and causation. As the Forensic Psychiatric Examination is Appellee's medical records masquerading as an expert report, it does not meet the definition of an expert report under Chapter 74 and should be disregarded. *See Maxwell v. Seifert*, 237 S.W.3d 423, 427 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (holding that medical records do not constitute an expert report under section 74.351); TEX. CIV. PRAC. & REM. CODE § 74.351(r)(6) (defining an "expert report" as "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed").

19

S.W.3d 669, 671-72 (Tex. 2008), this line of jurisprudence is inapplicable here. The legal tenet underpinning these opinions is that Texas law holds that employers may be vicariously liable for the acts of their employees if committed within the course and scope of their employment. *See Buck v. Blum*, 130 S.W.3d 285, 288 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, Texas law is equally clear that sexual assaults are not within the course and scope of employment.

When an employee turns away from the advancement of the employer's work to engage in wholly personal actions, the employee ceases to act for the employer, and the responsibility for those personal actions is upon the employee alone. *See Mackey v. U.P. Enters., Inc.*, 935 S.W.2d 446, 453 (Tex. App.—Tyler 1996, no writ). Thus, "an employee does not act within the scope of his duties when he assaults another person." *Sylvester v. Dallas Fire Ins. Co.*, No. 04-97-00754-CV, 1998 WL 130341, at *2 (Tex. App.—San Antonio Mar. 25, 1998, no pet.).

As a result, Texas courts have long held that alleged assaults, sexual or otherwise, are not within the course and scope of employment and will not support a finding of vicarious liability. *See Texas & P. Ry. Co. v. Hagenloh*, 247 S.W.2d 236, 241 (Tex. 1952) ("[W]hen the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an affair wholly his own, he ceases to act for the master, and the responsibility for that which he does in

20

pursuing his own business or pleasure is upon him alone."); *Buck*, 130 S.W.3d at 288; *NCED Mental Health, Inc. v. Kidd*, 214 S.W.3d 28, 34 n.8 (Tex. App.—El Paso 2006, no pet.) (noting that the plaintiff recognized that her alleged sexual assault complaints against an employee would not be within the course and scope of his employment); *Mackey*, 935 S.W.2d at 454 ("simply no connection between [food service managerial] duties and the alleged sexual assaults directed towards Mackey"); *Kelly v. Stone*, 898 S.W.2d 924, 929 (Tex. App.—Eastland 1995, writ denied) (sexual harassment and sexual advances were not work-related and were motivated by personal obsession and was in pursuit of his own personal gratification); *Shirley v. U.S.*, No. 4:03-CV-1385-Y, 2006 WL 708651, at *3 (N.D. Tex. May 21, 2006) ("It is clear here that [the employee's] actions were not work-related. In sexually assaulting [Plaintiff], [the employee] stepped aside from his employment to accomplish his own, rather than [his employer's], purpose.").

The *Buck* opinion is instructive, as it involved a virtually identical scenario. There, the plaintiff brought suit against Dr. Yen and the owners of Houston Neurological Institute, based on a sexual assault allegedly perpetrated by Dr. Yen during a neurological examination. *See Buck*, 130 S.W.3d at 287. Dr. Yen allegedly was conducting a test of the plaintiff's hand strength when he placed his penis in her hand rather than the test equipment. *See id*. at 287-88. As a result, the

21

plaintiff brought suit and an appeal was taken regarding the claims against Mr. Yen's employers based on *respondeat superior* and negligence. *See id*. at 287.

The first issue on appeal was whether Dr. Yen's purported actions were within the course and scope of his employment. *See id*. at 288-90. The court held that Dr. Yen's alleged actions were not within the course and scope of his employment. *See id*. at 290. As the court concluded:

> Here, Buck pleaded that during a neurological examination, Yen placed his penis in her hand instead of using the metal weight he had used previously. Buck contends that since the procedure itself was part of the examination, and thus within the scope of Yen's authority, the use of Yen's body part was simply an inappropriate exercise of the delegated duty. While it is undisputed Yen's alleged action was inappropriate, it cannot be fathomed that the action was in furtherance of the employer's business or for the accomplishment of an object for which he was employed. At the very moment Yen placed his body part in her hand (assuming he did), he was acting in his own prurient interest and ceased to be acting for the employer. The neurological examination at that point was only a pretense or a means for Yen's inappropriate personal gratification. Nor can it be said the assault was so connected with and immediately arising out of Yen's employment tasks as to merge the activities into one indivisible tort. . . . As a matter of law, Yen's alleged conduct did not arise out of the course and scope of his employment, and, thus, his employers cannot be held liable under respondeat superior.

*Id*. at 289-90 (citations omitted).

In sum, Texas law is clear that an employer cannot be held vicariously liable for sexual assaults allegedly committed by its employees, as such actions are not within the course and scope of employment. If such a claim has no merit under the law, an expert report premised on this same meritless theory is inadequate. Thus,

22

this Court should reverse the trial court and hold that Appellee failed to serve an adequate expert report.

### 3. *Certified EMS, Inc. v. Potts* **is distinguishable.**

It is anticipated that Appellee will rely heavily on the Texas Supreme Court's opinion in *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013). However, upon close inspection, this case is distinguishable for the question it does not answer. In *Potts*, the plaintiff brought direct and vicarious negligence claims against a staffing service for a sexual assault allegedly committed by one of its nurses. *See id*. at 626. When the plaintiff's expert reports failed to specify how the service was directly negligent for failure to properly train and supervise its staff, the staffing service moved to dismiss this claim. *See id*. The "single issue" presented to the Texas Supreme Court was: "Must a claimant in a health care liability suit provide an expert report for each pleaded liability theory?" *Id*. at 627. The Court ultimately held that "an expert report that adequately addresses at least one pleaded liability theory satisfies the statutory requirements, and the trial court must not dismiss in such a case." *Id*. at 632. However, "[t]he [staffing] service has not challenged, in this Court, the reports' adequacy concerning its vicarious liability." *Id*. at 626.

Thus, the Court left open the question presented here; namely, whether an expert report which relies on vicarious liability in this context is adequate. As

23

shown above, it is not. Again, one of the primary purposes of the expert report requirement is to "weed out claims that have no merit." *Loaisiga v. Cerda*, 379 S.W.3d 248, 263 (Tex. 2012). If the only cause of action addressed by an expert report is a vicarious liability theory which has no basis under the law, the goal of section 74.351—providing a report showing that the claim has merit—has not been met. Thus, Appellee finds no refuge in Mr. Bunyard's alleged breach of his standard of care and cannot rely on vicarious liability against HSH. The trial court's ruling should be reversed.

## C. Appellee's amended expert reports are conclusory as to causation.

"An expert report must provide a fair summary of the causal relationship between the failure of a health care provider to meet the standards of care and the injury, harm, or damages claimed." *Tenet Hospitals Ltd. v. Love*, 347 S.W.3d 743, 754 (Tex. App.—El Paso 2011, no pet.). This cannot be conclusory. Rather, it must explain the basis of the expert's statements regarding causation and link his conclusions to the facts. *See id.* "A causal relationship is established by proof that the negligent act or omission was a substantial factor in bringing about the harm and that absent said act or omission, the harm would not have occurred." *Id.* at 755 (emphasis added). In this regard, "the expert must go further and explain, to a reasonable degree, ***how and why*** the breach caused the injury based on the facts presented." *Al-Lahiq v. Rosemond*, No. 14-13-00158-CV, 2013 WL 5969720, at

24

*3 (Tex. App.—Houston [14th Dist.] Nov. 7, 2013, no pet.) (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 539-40 (Tex. 2010)) (emphasis added). Stated differently, the expert report must demonstrate causation beyond mere conjecture. *See id*.

For the reasons explained above, Appellee's vicarious liability claim fails as a matter of law. Without her vicarious liability claim, Appellee is relegated to establishing that her injuries were proximately caused by HSH's alleged negligent hiring, supervision and retention. Dr. Ray wholly fails to address how HSH's negligent hiring, supervision and retention caused Appellee's injuries. Dr. Miller purports to address this but fails to explain "how and why" HSH's policy failures in hiring, supervising and retaining Nurse Bunyard proximately caused Appellee's damages. *Al-Lahiq*, 2013 WL 5969720, at *3. For instance, there is no indication in Dr. Miller's report that a background check of Nurse Bunyard would have yielded any information suggesting he was unfit for hire. Instead, Dr. Miller infers HSH's insufficient hiring, supervision and retention policies and procedures precipitated this incident. This cannot merely be assumed. By failing to explain how HSH's hiring, supervision and retention policies were a substantial factor in Appellee's injuries, Appellee did not provide a fair summary of causation. The trial court's ruling should be reversed.

## CONCLUSION & PRAYER

For the above reasons, this Court should reverse the trial court's order denying Appellant's motion to dismiss and render a judgment of dismissal with prejudice in favor of Appellant, Humble Surgical Hospital L.L.C. (incorrectly named as Humble Surgical Hospital Services, L.L.C., Humble Surgical Holdings, L.L.C., Houston Humble Surgical, P.L.L.C., Humble Spine Surgery, P.L.L.C.), as required by Chapter 74 of the Civil Practice & Remedies Code, including an assessment of attorneys' fees or, alternatively, remand with instructions to the trial court to assess statutory attorneys' fees and then to enter a judgment of dismissal with prejudice.

Respectfully submitted,

**HORNE ROTA MOOS, LLP**

By:	*/s/ Joshua Anderson*
		JOSHUA ANDERSON
		SBN: 24027198
		janderson@hrmlawyers.com
		CHASTITI N. HORNE
		SBN: 24007385
		chorne@hrmlawyers.com
		2777 Allen Parkway, Suite 1200
		Houston, Texas 77010
		(713) 333-4500
		(713) 333-4600 Facsimile

ATTORNEYS FOR APPELLANT

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rules of Appellate Procedure, the undersigned certifies this brief complies with the type-volume limitations of TEX. R. APP. P. 9.4.

1.     This brief complies with the type-volume limitations of TEX. R. APP. P. 9.4 because:

This brief contains 7,440 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(1).

2.     This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word XP version 10 in 14 pt Times New Roman (Footnotes in 12 pt.).

*/s/ Joshua C. Anderson*
JOSHUA C. ANDERSON

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that a true and correct copy of the Appellant's Brief was served on the following counsel of record by electronic filing service, email and/or certified mail, return receipt requested on October 19, 2015.


Jacqueline M. Houlette
HOULETTE & GRAY, P.L.L.C.
440 Louisiana Street, Suite 900
Houston, Texas 77002
*Counsel for Plaintiff/Appellee*


*/s/ Joshua C. Anderson*
JOSHUA C. ANDERSON

APPENDIX

## INDEX TO APPENDIX

1)     Order dated August 3, 2015 Overruling Humble Defendants' Objections to Plaintiff's Chapter 74 Expert Reports and Denying Defendants' Motions to Dismiss (CR 166).

2)     TEX. CIV. PRAC. & REM. CODE ANN. § 74.351.


FILED
7/28/2015 6:40:34 AM
Stan Stanart
County Clerk
Harris County

## CAUSE NO. 1044724

| | | |
|---|---|---|
| CHRISTY L. TRAYNOR | § | IN THE COUNTY COURT |
| | § | |
| v. | § | |
| | § | |
| HUMBLE SURGICAL HOSPITAL | § | AT LAW NO. 2 |
| L.L.C., HUMBLE SURGICAL | § | |
| HOSPITAL SERVICES, L.L.C., | § | |
| HUMBLE SURGICAL HOLDINGS, | § | |
| L.L.C., HOUSTON HUMBLE | § | |
| SURGICAL, P.L.L.C., HUMBLE | § | |
| SPINE SURGERY, P.L.L.C., and | § | |
| KELLY JOE BUNYARD, individually | § | HARRIS COUNTY, TEXAS |

### ORDER OVERRULING HUMBLE DEFENDANTS' OBJECTIONS TO PLAINTIFF'S CHAPTER 74 EXPERT REPORTS AND DENYING DEFENDANTS' MOTIONS TO DISMISS

On this day, came on to be heard Defendants HUMBLE SURGICAL HOSPITAL L.L.C., HUMBLE SURGICAL HOSPITAL SERVICES L.L.C., HUMBLE SURGICAL HOLDINGS, L.L.C., HOUSTON HUMBLE SURGICAL, P.L.L.C., HUMBLE SPINE SURGERY, P.L.L.C.'s ("HUMBLE DEFENDANTS") Objections to Plaintiff's Chapter 74 Expert Reports and Motion to Dismiss.

The Court, having considered the pleadings, the evidence and the arguments of counsel, finds that Defendants' HUMBLE SURGICAL HOSPITAL L.L.C., HUMBLE SURGICAL HOSPITAL SERVICES L.L.C., HUMBLE SURGICAL HOLDINGS, L.L.C., HOUSTON HUMBLE SURGICAL, P.L.L.C., HUMBLE SPINE SURGERY, P.L.L.C. Objections to Plaintiff's Chapter 74 Expert Reports are OVERRULED.

Further, having considered the pleadings, the evidence, and the argument of counsel, the Court finds that Defendants' HUMBLE SURGICAL HOSPITAL L.L.C., HUMBLE SURGICAL HOSPITAL SERVICES L.L.C., HUMBLE SURGICAL HOLDINGS, L.L.C.,

Traynor-TMLA-1044724-CCL2      1

HOUSTON HUMBLE SURGICAL, P.L.L.C., HUMBLE SPINE SURGERY, P.L.L.C 's Motion to Dismiss should be denied.

It is, THEREFORE ORDERED, ADJUDGED and DECREED that Defendants' HUMBLE SURGICAL HOSPITAL L.L.C., HUMBLE SURGICAL HOSPITAL SERVICES L.L.C., HUMBLE SURGICAL HOLDINGS, L.L.C., HOUSTON HUMBLE SURGICAL, P.L.L.C., HUMBLE SPINE SURGERY, P.L.L.C.'s Motion to Dismiss is in all things DENIED.

Signed this ___3rd___ day of ___August___ , 2015.

_____
JUDGE PRESIDING

APPROVED AND ENTRY REQUESTED:

/s/ Jacqueline M. Houlette
**Jacqueline M. Houlette**
TBA No. 00787718
440 Louisiana, Suite 900
Houston, Texas 77002
Phone: (713) 236-7740
Fax:    (713) 583-3010

**ATTORNEY FOR PLAINTIFF**



KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 4. Liability in Tort
      Chapter 74. Medical Liability (Refs & Annos)
        Subchapter H. Procedural Provisions (Refs & Annos)

V.T.C.A., Civil Practice & Remedies Code § 74.351

§ 74.351. Expert Report

Effective: September 1, 2013
Currentness

(a) In a health care liability claim, a claimant shall, not later than the 120th day after the date each defendant's original answer is filed, serve on that party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted. The date for serving the report may be extended by written agreement of the affected parties. Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the later of the 21st day after the date the report is served or the 21st day after the date the defendant's answer is filed, failing which all objections are waived.

(b) If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall, subject to Subsection (c), enter an order that:

  (1) awards to the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and

  (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice.

(d) to (h) [Subsections (d)-(h) reserved]

(i) Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.

(j) Nothing in this section shall be construed to require the serving of an expert report regarding any issue other than an issue relating to liability or causation.

(k) Subject to Subsection (t), an expert report served under this section:

   (1) is not admissible in evidence by any party;

   (2) shall not be used in a deposition, trial, or other proceeding; and

   (3) shall not be referred to by any party during the course of the action for any purpose.

(*l*) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).

(m) to (q) [Subsections (m)-(q) reserved]

(r) In this section:

   (1) "Affected parties" means the claimant and the physician or health care provider who are directly affected by an act or agreement required or permitted by this section and does not include other parties to an action who are not directly affected by that particular act or agreement.

   (2) "Claim" means a health care liability claim.

   (3) [reserved]

   (4) "Defendant" means a physician or health care provider against whom a health care liability claim is asserted. The term includes a third-party defendant, cross-defendant, or counterdefendant.

   (5) "Expert" means:

      (A) with respect to a person giving opinion testimony regarding whether a physician departed from accepted standards of medical care, an expert qualified to testify under the requirements of Section 74.401;

      (B) with respect to a person giving opinion testimony regarding whether a health care provider departed from accepted standards of health care, an expert qualified to testify under the requirements of Section 74.402;

(C) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care in any health care liability claim, a physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence;

(D) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a dentist, a dentist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence; or

(E) with respect to a person giving opinion testimony about the causal relationship between the injury, harm, or damages claimed and the alleged departure from the applicable standard of care for a podiatrist, a podiatrist or physician who is otherwise qualified to render opinions on such causal relationship under the Texas Rules of Evidence.

(6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

(s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through:

(1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure;

(2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and

(3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure.

(t) If an expert report is used by the claimant in the course of the action for any purpose other than to meet the service requirement of Subsection (a), the restrictions imposed by Subsection (k) on use of the expert report by any party are waived.

(u) Notwithstanding any other provision of this section, after a claim is filed all claimants, collectively, may take not more than two depositions before the expert report is served as required by Subsection (a).

**Credits**
Added by Acts 2003, 78th Leg., ch. 204, § 10.01, eff. Sept. 1, 2003. Amended by Acts 2005, 79th Leg., ch. 635, § 1, eff. Sept. 1, 2005; Acts 2013, 83rd Leg., ch. 870 (H.B. 658), § 2, eff. Sept. 1, 2013.

Notes of Decisions (1902)

V. T. C. A., Civil Practice & Remedies Code § 74.351, TX CIV PRAC & REM § 74.351

Current through the end of the 2015 Regular Session of the 84th Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.