

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00402-CV

BAYLOR ALL SAINTS MEDICAL                                  APPELLANT
CENTER

V.

PAMELA MARTIN AND JOHN                                     APPELLEES
MARTIN

----------

## FROM THE 17TH DISTRICT COURT OF TARRANT COUNTY

----------

## OPINION

----------

## I. Introduction

In one issue, Appellant Baylor All Saints Medical Center asserts that the trial court erred when it determined that the expert report filed by the Appellees Pamela and John Martin met the requirements of section 74.351 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (Vernon 2011). We reverse and remand.

## II.  Factual and Procedural History

The Martins sued Baylor for negligence, alleging that Pamela was sexually assaulted in her hospital room as she recovered from surgery.  In support of their claim, the Martins served Baylor with Dr. John C. Shershow, M.D.'s expert report and curriculum vitae.  Baylor objected to the report's sufficiency, moved to dismiss the Martins' claim, and requested attorney's fees.  The trial court overruled Baylor's objections after a hearing and denied Baylor's motion to dismiss and request for attorney's fees.  This appeal followed.

## III.  Expert Report

Baylor appeals the trial court's order overruling its objections that the Martins' expert witness report does not comply with section 74.351, arguing that the report failed to adequately set forth the standard of care applicable to Baylor and how that standard was breached.

## A.  Standard of Review

We review a trial court's denial of a motion to dismiss for an abuse of discretion.  *Jernigan v. Langley*, 195 S.W.3d 91, 93 (Tex. 2006); *Maris v. Hendricks*, 262 S.W.3d 379, 383 (Tex. App.—Fort Worth 2008, pet. denied); *Ctr. for Neurological Disorders, P.A. v. George*, 261 S.W.3d 285, 290–91 (Tex. App.—Fort Worth 2008, pet. denied).  A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles.  *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).  Merely because a trial

2

court may decide a matter within its discretion in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.* However, a trial court has no discretion in determining what the law is, or in applying the law to the facts, and thus "a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding); *Ehrlich v. Miles*, 144 S.W.3d 620, 624 (Tex. App.—Fort Worth 2004, pet. denied).

**B. Applicable Law**

Section 74.351 of the civil practice and remedies code, entitled "Expert Report," provides,

> (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, . . .
>
> . . . .
>
> (c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. . . .
>
> . . . .
>
> (*l*) A court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6).
> . . . .
>
> (r) In this section: . . . .

> (6) "Expert report" means a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

> (s) Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care[.]

Tex. Civ. Prac. & Rem. Code Ann. § 74.351.

The purpose of the expert report requirement is to inform the defendant of the specific conduct the plaintiff has called into question and to provide a basis for the trial court to conclude that the claims have merit. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (citing *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). When a defendant moves to dismiss a plaintiff's claims for failure to provide the required expert report,

> The issue for the trial court is whether "the report" represents a good-faith effort to comply with the statutory definition of an expert report. That definition requires, as to each defendant, a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury. Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document.

*Palacios*, 46 S.W.3d at 878 (citations omitted).

An expert report "need not marshal all the plaintiff's proof." *Id.* at 878–79. While the report must do more than simply state the expert's conclusions about

4

the standard of care, breach, and causation, to avoid dismissal "a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id.* at 879.

> [t]he standard of care for a hospital is what an ordinarily prudent hospital would do under the same or similar circumstances. Identifying the standard of care is critical: Whether a defendant breached his or her duty to a patient cannot be determined absent specific information about what the defendant should have done differently. "While a 'fair summary' is something less than a full statement of the applicable standard of care and how it was breached, even a fair summary must set out what care was expected, but not given."

*Id*. at 880 (citations omitted). Assaults of the type alleged by the Martins are covered by section 74.351. *See, e.g., Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 853, 855 (Tex. 2005) (holding that a patient's claim against a nursing home for negligence in failing to provide sufficient staff and supervision to prevent her sexual assault by another patient is a health care liability claim).

## C. Analysis

Baylor argues that Dr. Shershow's report fails to adequately identify the standard of care and that he does not include specific information about what Baylor should have done differently. Dr. Shershow's report presents the following as Baylor's standard of care under the facts of this case:

5

<u>Standard of Care</u>

A hospital such as Baylor All Saints Medical [C]enter is expected to adhere to specific standards of care in regard to all of its patients. A bedrock principal [sic] in providing care to its patients is the understanding that all of a hospital's patients by nature of their disease or injury are potentially vulnerable and necessarily need to receive treatment in a safe and secure environment. The Joint Commission on Accreditation of Health Care Organizations (JCAHO) has established in its Hospital Standards that all healthcare organizations must have in place policies which safeguard patients from assault by hospital staff and by strangers that enter the hospital. The JCAHO requires that hospitals adequately implement these standards, and monitor this implementation. The JCAHO patient security and safety expectations would require at a minimum that hospitals should employ a sufficient number of security personal [sic] to insure that no unauthorized persons enter patients['] rooms and physically assault their patients. Additionally, the JCAHO standards would expect that all hospital staff should be trained to identify persons that are not authorized to enter patients['] rooms and should monitor and prevent unauthorized persons from having access to patients receiving treatment at the hospital.

The Martins reply that the trial court did not abuse its discretion by denying Baylor's motion to dismiss, claiming that Dr. Shershow's report was adequate. They alternatively argue that the medical records that section 74.351(s) allows them to discover do not contain adequate information to establish the appropriate standard of care and breach thereof, and hence, further discovery should be allowed.

We observe that the Martins were well aware, as set out in their petition, of the alleged facts of the assault. Hence, it was incumbent upon their expert to articulate the standard of care applicable to the hospital to prevent such an

6

assault, which does not require a factual inquiry into the measures taken by the hospital to meet this standard of care.

Dr. Shershow's report opines (1) that Baylor is expected to adhere to "specific standards of care" for its patients, (2) that there must be policies in place to safeguard patients from assault, including employing "a sufficient number of security personal [sic] to insure that no unauthorized persons assault patients and training staff to identify persons not authorized to enter patients['] rooms and prevent them from doing so," and (3) that these standards must be adequately implemented. These opinions do not establish what specific policies and safeguards should have been in place. For example, the "policies in place to safeguard patients" are not identified; neither are the number of security personnel required nor the training the staff should have received regarding identifying unauthorized persons. *See Wright*, 79 S.W.3d at 52 (stating that the expert must explain the basis of his statements to link his conclusions to the facts).

Keeping in mind that mere conclusions about the standard of care are insufficient, that the standard is "what an ordinary prudent hospital would do under the same or similar circumstances," and that "even a fair summary must set out what care was expected," *see Palacios*, 46 S.W.3d at 880, we cannot agree that Dr. Shershow's report fulfills the required specificity.

And although the Martins specifically complain that section 74.351(s) only allows discovery of medical records and billing records, which do not contain the

7

circumstances surrounding the assault and hence provide no discovery as to whether security standards were met, this is a misreading of the discovery allowed under section 74.351(s). Section 74.351(s) allows discovery "of information, *including* medical or hospital records *or other documents or tangible things*, related to the patient's health care." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s) (emphasis added). Furthermore, as assaults of the type here are covered by section 74.351, *see Rubio*, 185 S.W.3d at 851, logically, discovery of the hospital's policies and procedures regarding the protection of patients from assault must be covered by section 74.351(s). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(s) (stating that all discovery is stayed except for acquisition by the claimant of information related to the patient's health care); *see also Bogar v. Esparza*, 257 S.W.3d 354, 371–72 (Tex. App.—Austin 2008, no pet.) (op. on reh'g) (noting that the plaintiff has the burden to establish that section 74.351's discovery limitations have in fact prevented her from satisfying the statute's expert report requirements and pursuing her claim). *But cf. Simmons v. Texoma Med. Ctr.*, 329 S.W.3d 163, 174 (Tex. App.—El Paso 2010, no pet. h.) (interpreting section 74.351(s) to preclude "[d]iscovery of issues such as financial information, insurance and indemnity agreements, corporate organization, and even bylaws, policies, and procedures" until an expert report is served).

Therefore, we hold that with respect to the establishment of the appropriate standard of care for Baylor and the breach of that standard, the

8

Martins' expert report was deficient, and the trial court abused its discretion by finding otherwise. We sustain Baylor's sole issue.[1]

## IV. Conclusion

Having sustained Baylor's sole issue, we reverse the trial court's order and remand this case to the trial court to consider whether to grant a thirty-day extension to cure the deficiency. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c); *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2008); *Foster v. Richardson*, 303 S.W.3d 833, 845–46 (Tex. App.—Fort Worth 2009, no pet.).


BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DELIVERED: April 14, 2011

---

[1]Based on our resolution, we do not reach Baylor's other arguments. *See* Tex. R. App. P. 47.1.