ACCEPTED
01-15-00718-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
12/14/2015 11:40:32 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-1500718-CV

In The First District Court of Appeals
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
12/14/2015 11:40:32 PM
CHRISTOPHER A. PRINE
Clerk

# HUMBLE SURGICAL HOSPITAL L.L.C., HUMBLE SURGICAL HOSPITAL SERVICES, L.L.C., HUMBLE SURGICAL HOLDINGS, L.L.C., HOUSTON HUMBLE SURGICAL, P.L.L.C., HUMBLE SPINE SURGERY, P.L.L.C.,

*Appellant*,

v.

## CHRISTY L. TRAYNOR,

*Appellee*.

On Appeal from Cause No. 1044724
in the County Court of Law No. 2, Harris County, Texas

## APPELLEE'S BRIEF

**HOULETTE & GRAY, P.L.L.C.**

Jacqueline M. Houlette
State Bar No. 00787718
440 Louisiana, Suite 900
Houston, Texas 77002
Telephone: (713) 236-7740
Facsimile:  (713) 583-3010
E-mail:  jhoulette@houlette-gray.com

**ORAL ARGUMENT REQUESTED**

i

## **REQUEST FOR ORAL ARGUMENT**

Appellee requests oral argument. *See* Tex. R. App. 39.1.

# TABLE OF CONTENTS

**REQUEST FOR ORAL ARGUMENT** .................................................................. ii

**TABLE OF CONTENTS** ................................................................................. iii

**INDEX OF AUTHORITIES** ........................................................................... iv

**ISSUES PRESENTED** .................................................................................... vi

**STATEMENT OF FACTS** .............................................................................. 8

**SUMMARY OF THE ARGUMENT** ................................................................ 9

**STANDARD OF REVIEW** ............................................................................. 10

**ARGUMENTS AND AUTHORITIES** .............................................................. 11

**CONCLUSION AND PRAYER** ....................................................................... 24

# INDEX OF AUTHORITIES

**Cases**

*Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,*
 46 S.W.3d 873, 878 (Tex. 2001). ............................................................ 10, 19, 24

*Baylor All Saints Med. Ctr. v. Martin,*
 340 S.W. 3d 529, 534 (Tex. App.—Fort Worth, 2011, no pet.) ........................... 20

*Bowie Mem'l Hosp. v. Wright,*
 79 S.W.3d 48, 52 (Tex. 2002) ............................................................................ 10

*Certified EMS, Inc., v. Potts,*
 392 S.W.3d 625, 632 (Tex. 2013) ................................................................. 22, 23

*Christus Spohn Health System Corp. v. Sanchez,*
 299 S.W.3d 868, 877 (Tex. App.—Corpus Christi, pet. denied.) ......................... 21

*Gray v. CHCA Bayshore L.P.,*
 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ................. 11

*Keo v. Vu,*
 76 S.W.3d 725, 732 (Tex. App. —Houston [1st Dist.] 2002) .............................. 14

*Packard v. Guerra,*
 252 S.W.3d 511 (Tex. App.—Houston [14th Dist.] 2008) ................................... 12

*Pediatrix Med. Grp., Inc., v. Robinson,*
 352 S.W.3d 879, 884 (Tex. App.—Dallas 2011, no pet.) .................................... 13

*Rittger v. Danos,*
 332 S.W.3d 550, 558 (Tex. App.—Houston [1st Dist.] 2009, no pet.) ................. 14

*Tawa v. Gentry,*
 01-12-00407-CV, 2013 WL 1694869, at *5 (Tex. App.—Houston [1st Dist.] Apr.
   18, 2013, no pet.) .......................................................................... 13, 14, 18, 19

*Taylor v. Christus Spohn Health Sys. Corp.,*
 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.) ........................ 10

*Walker v. Gutierrez,*
 111 S.W.3d 56, 62 (Tex. 2003) ................................................................ 10

**Statutes**

Tex. Civ. Prac. & Rem Code § 74 ................................................................ vi, 23

Tex. Civ. Prac. & Rem Code § 74.351 ........................................................ 8, 9

Tex. Civ. Prac. & Rem Code § 74.351 (i) ................................................... 11, 12

Tex. Civ. Prac. & Rem Code § 74.402 ........................................................ 13, 17

**Rules**

Tex. R. App. 39.1 ..................................................................................... ii

Tex. R. App. P. 9.4 .................................................................................. 25

# ISSUES PRESENTED

Whether the trial court erred when it refused to dismiss this action based on Appellant's objections under Chapter 74 of the Texas Civil Practice & Remedies Code.

The trial court did not err when it denied Appellant's Motion to Dismiss because:

a. The expert reports and curriculum vitae of Priscilla Ray, M.D. and Cathy L. Miller, R.N., Ph.D. establish that both are qualified to opine on Appellant's standard of care in this case;

b. The expert reports of Priscilla Ray, M.D. and Cathy L. Miller, R.N., Ph.D. inform the Appellant of the specific conduct that Traynor has called into question and provide a basis for the trial court to conclude that the claims have merit.

c. The expert reports of Priscilla Ray, M.D. and Cathy L. Miller, R.N., Ph.D. establish the bases for their opinions that Appellant is culpable in this case based on a direct theory of liability as well as vicarious liability.

d. The expert report of Dr. Cathy L. Miller provides information as to how Appellant's lack of adequate policies and procedures was a substantial factor in causing Traynor's injuries.

e. Appellant cannot limit, as a matter of law, Traynor's basis for vicarious liability based solely on its interpretation of Traynor's allegations.

In The First District Court of Appeals
Houston, Texas

**HUMBLE SURGICAL HOSPITAL L.L.C., HUMBLE SURGICAL HOSPITAL SERVICES, L.L.C., HUMBLE SURGICAL HOLDINGS, L.L.C., HOUSTON HUMBLE SURGICAL, P.L.L.C., HUMBLE SPINE SURGERY, P.L.L.C.,**

*Appellant*,

v.

**CHRISTY L. TRAYNOR,**

*Appellee*.

On Appeal from Cause No. 1044724
in the County Court of Law No. 2, Harris County, Texas

**APPELLEE'S BRIEF**

TO THE HONORABLE COURT OF APPEALS:

**COMES NOW**, Christy L. Traynor ("Appellee" or "Traynor"), Appellee in the above-entitled and numbered appeal and submits this her Appellee's Brief in response to the brief filed by Appellant, Humble Surgical Hospital L.L.C., Humble Surgical Hospital Services, L.L.C., Humble Surgical Holdings, L.L.C., Houston Humble Surgical, P.L.L.C., Humble Spine Surgery, P.L.L.C. ("Appellant").

Traynor requests this court affirm the decision of the County Court of Law No. 2 of Harris County, Texas, denying Appellant's Motion to Dismiss under Section 74.35l of the Texas Civil Practice and Remedies Code, and in support thereof, would respectfully show this Court as follows:

## STATEMENT OF FACTS

On December 19, 2011, Christy L. Traynor ("Traynor") underwent back surgery at Humble Surgical Hospital ("Appellant"). (CR 3).That night as she recovered, she was under the care of Humble Surgical Hospital and its employee, Nurse Kelly Bunyard. During the course of the night following her surgery, Nurse Kelly Bunyard entered Ms. Traynor's room repeatedly and fondled and groped Ms. Traynor. (CR 53). Ms. Traynor filed this lawsuit on March 6, 2014, asserting negligence claims against Nurse Kelly Bunyard and his employer, the Appellant. (CR 4). Traynor asserted both direct and vicarious liability claims against Appellant. (CR 6-7). With regard to her claims against Appellant, Traynor has brought a direct cause of action against Appellant for the following:

(a) Failing to properly hire and retain the nursing care provided to Plaintiff;

(b) Failing to properly supervise the nursing care provided to Plaintiff;

(c) Failing to monitor the nursing care provided to Plaintiff; and

(d) Failing to properly treat the Plaintiff.

(CR 6-7).

8

In addition, Ms. Traynor has brought a case against Appellant for vicarious liability, asserting that:

> Defendants are vicariously liable for the acts or omissions of their respective employees and agents who were employed by or in agency or contractual relationship with them all times material hereto and Plaintiff hereby invokes the doctrines of agency, ostensible agency and/or agency by estoppel with respect to those relationships.

(CR 6-7).

Traynor timely served expert reports upon Appellant on August 26, 2014, to satisfy § 74.351 requirements. Appellant objected to Traynor's expert reports and moved to dismiss the case. (CR 172-73). The Court then granted Traynor a thirty day extension of time for Traynor to cure the alleged deficiencies in Traynor's expert reports. (CR 34).

Traynor subsequently filed amended expert reports, which included the January 10, 2015, report of Cathy L. Miller, R.N., Ph.D. and the December 22, 2014 and January 12, 2015, reports of Priscilla Ray, M.D. (CR 78-165). Appellant again objected to the sufficiency of the reports and moved to dismiss the case.

The trial court denied that motion, which led to this appeal.

## SUMMARY OF THE ARGUMENT

Traynor has served Appellant with expert reports of Cathy L. Miller, R.N., Ph.D. and Priscilla Ray, M.D. that meet the requirements of Chapter 74.

The expert reports and attached curricula vitae identify each expert's qualifications. Dr. Miller and Dr. Ray identify the standard of care applicable to Nurse Bunyard, and his conduct which clearly breached that standard. Dr. Miller identifies the standard of care of the Appellant's hospital at which Bunyard worked, and the conduct which breached that standard of care. Dr. Ray identifies and explains how the above-referenced breaches of duty proximately caused the injuries sustained by Traynor.

## STANDARD OF REVIEW

A trial court's decision on a motion to dismiss under section 74.351 of the Civil Practice and Remedies Code is reviewed for abuse of discretion. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex. 2001). The trial court abuses its discretion only if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles. *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003). The trial court's ruling is arbitrary and unreasonable only if "the appellant establishes that the trial court could reasonably have reached only one decision." *Taylor v. Christus Spohn Health Sys. Corp.,* 169 S.W.3d 241, 244 (Tex. App.—Corpus Christi 2004, no pet.).

When reviewing matters committed to the trial court's discretion, an appellate court may not substitute its own judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not

10

abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Gray v. CHCA Bayshore L.P.*, 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

## ARGUMENTS AND AUTHORITIES

### A. Plaintiff's Expert Reports Must Be Considered in the Aggregate

Appellant attempts to suggest that the Court erred in denying its Motion to Dismiss because of alleged deficiencies in each expert report served by Traynor, suggesting each report has to independently meet all of the law's required elements regarding liability and causation. This is simply not the law. The Texas Medical Liability Act requires that **all** of the expert reports and **all** of the experts' curriculum vitae be cumulatively considered when evaluating reports for sufficiency. TEX. CIV. PRAC. & REM CODE § 74.351 (i). The statute is clear regarding this culmination, stating:

> (i) Notwithstanding any other provision of this section, a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider, such as issues of liability and causation. *Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.*

TEX. CIV. PRAC. & REM CODE § 74.351 (i).

11

All of Traynor's reports must be taken together in determining the liability and causation of any one Defendant. All of Dr. Ray's reports, curriculum vitae, and supplements must be aggregated with all of Dr. Miller's expert reports, curriculum vitae and supplements in order to meet the minimum Chapter 74 expert report requirements Put simply, the statute allows Dr. Miller and/or Dr. Ray to opine regarding the standard of care, its breach, and the actions which each Defendant should have taken to prevent that breach and then allow Dr. Ray to discuss how that breach caused injury to Traynor and the resulting damages. No single report must contain each and every element.

Any attempt by Appellant to individually parse each particular component of each expert report rather than considering them in the aggregate must fail under § 74.351 (i) above. When evaluating Chapter 74 expert reports, all reports must ne considered in the aggregate to determine whether a party has met the statutory requirements. *Packard v. Guerra*, 252 S.W.3d 511 (Tex. App.—Houston [14th Dist.] 2008).

**B. Christy Traynor's expert reports reflect that Dr. Ray and Dr. Miller are qualified to render expert opinions on Appellant's conduct in this case**

Section 74.402 of the Texas Medical Liability Act states:

(b) In a suit involving a health care liability claim against a health care provider, a person may qualify as an expert witness on the issue of

12

whether the health care provider departed from accepted standards of care only if the person:

> (1) is practicing health care in a field of practice that involves the same type of care or treatment as that delivered by the defendant health care provider, if the defendant heath care provider is an individual, at the time the testimony is given or was practicing that type of health care at the time the claim arose;

> (2) has knowledge of accepted standards of care for health care providers for the diagnosis, care, or treatment of the illness, injury, or condition involved in the claim; and

> (3) is qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of health care.

Tex. Civ. Prac. & Rem Code § 74.402. [NOTE: Section 74.402(b)(1) is not applicable since Defendant Humble Surgical Hospital is not an individual as is required by the statute.]

As established in *Tawa v Gentry*, in assessing an expert's qualifications, "The relevant issue is not the physician's area of practice but the stated familiarity with the issues involved in the claim before the court." *Tawa v. Gentry*, 01-12-00407-CV, 2013 WL 1694869, at *5 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (citing *Pediatrix Med. Grp., Inc., v. Robinson*, 352 S.W.3d 879, 884 (Tex. App.—Dallas 2011, no pet.)). "Where a particular subject of inquiry is common to and equally developed in all fields of practice, and the prospective medical expert witness has practical knowledge of what is usually and customarily

13

done by a practitioner charged with malpractice, the ***witness is qualified to testify***." *Id.* at \*7 (emphasis added) (citing *Rittger v. Danos,* 332 S.W.3d 550, 558 (Tex. App.—Houston [1st Dist.] 2009, no pet.)). Such is the case here where the conduct at issue so clearly falls outside the standard of care.

Courts use a common sense approach to determine whether an expert is qualified as to the familiarity of the "field of practice." *Keo v. Vu* demonstrates the common sense approach to be used in considering the "field of practice" by the expert witness. *Keo* states:

> Courts of appeals have also recognized that an expert witness need not be a specialist in the particular branch of the medical profession for which the testimony is offered. *See Hernandez v. Altenberg*, 904 S.W.2d 734, 738 (Tex. App.—San Antonio 1995, writ denied); *Simpson v. Gl*enn, 537 S.W.2d 114, 116 (Tex. Civ. App.—Amarillo 1976, writ ref'd n.r.e.). Indeed, trial courts may qualify a medical witness of a different specialty to testify if the witness has ***practical knowledge of what is usually and customarily done*** by other practitioners under circumstances similar to those confronting the malpractice defendant. *Blan,* 7 S.W.3d at 745; *see Marling v. Maillard*, 826 S.W.2d 735, 740 (Tex. App.—Houston [14th Dist.] 1992, no writ) (citing *Bilderback v. Priestley*, 709 S.W.2d 736, 740 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.)).

*Keo v. Vu*, 76 S.W.3d 725, 732 (Tex. App. —Houston [1st Dist.] 2002) (emphasis added).

## 1. Dr. Cathy L. Miller has set forth her qualifications to render an opinion in this case

Doctor Miller's qualifications are evident within the four corners of her expert report as well as her curriculum vitae. In the second sentence of Dr. Miller's report she states as follows:

> "I am qualified to render expert opinion on the standard of care required of nurses in the medical setting in addition to those experiencing sexual assault. I hold a PhD in Nursing. I have 20 years' experience as an emergency department, level 1 trauma, CVICU, and critical care flight nurse, and multiple administrative positions such as Director over multiple units in addition to adult and pediatric Sexual Assault Nurse Examiner didactic certificates. Furthermore, I have 6 years' experience in Baccalaureate and Graduate level nursing education. Past positions held include director, assistant director, lecturer, assistant clinical professor, and flight nurse. My current position is as an Adjunct Lecturer at a private school of nursing. I have published twice in a peer reviewed scholarly journals on emergency nursing care of sexual assault victims and psychological complex trauma. I have presented on these topics both nationally and internationally."

(CR 115).

Dr. Miller's curriculum vitae reflects her skill, knowledge, training and experience, including:

1) Clinical Instructor, August 2011-August 2012
    a. University of Texas Health Science Center San Antonio School of Nursing
    b. San Antonio, Texas
    c. Courses:  Adult 1:  Clinical Instructor Disease Management III

2) Clinical Assistant Professor, August 2010-August 2011
   Texas A&M University-Corpus Christi, Corpus Christi, TX
    a. Courses: Fundamentals of Nursing Practice

15

       i. Clinical Instructor-Medical Surgical Nursing II
       ii. Clinical Instructor-Fundamentals in Nursing
       iii. Burn/Trauma Guest Lecturer
       iv. Coordinator Drug Calculations Exam Program

3) Adjunct Assistant Clinical Professor, August 2009-August 2010
   Texas A&M University-Corpus Christi, Corpus Christi, TX

   a. Courses:  Clinical Instructor-Fundamentals of Nursing Practice
      i. Health Assessment-Lab Instructor

4) House Supervisor, March 2008-July 2009
   Kindred Hospital, Corpus Christi, TX

5) Staff RN-CVICU, January 2007-March 2008
   Doctors Regional Medical Center, Corpus Christi, TX

6) Coordinator-Emergency Department, June 2004-April 2005
   Driscoll Children's Hospital, Corpus Christi, TX

7) Director- Emergency Department, Outpatient Surgery, and CVICU
      a. October 2003-June 2004 TexSan Heart Hospital, San Antonio, TX

8) Staff RN- Emergency Department-June 2001-October 2003
      a. University Medical Center, San Antonio, Texas

(CR 108-110).

Dr. Miller's qualifications are evident from both her expert report as well as her curriculum vitae. She details her experience as a nurse and as a nursing supervisor.

In addition, Dr. Miller elaborated on her qualifications to issue opinions regarding Defendant Humble Surgical Hospital, stating:

> "I am qualified to render these observations based on a doctoral level of education with extensive knowledge of nursing best practices

as well as having been published in peer review nursing journals on the topics of sexual assault and psychological complex trauma. My 20 years of clinical and administrative experience including experience as Director over multiple acute care units, House Supervisor over multiple hospital campuses and having been the immediate supervisor to over 200 nurses at one time qualifies me to render these observations, citations of Texas Board Nursing rules and regulations, and breaches in standards of care in nursing."

(CR 115).

**2. Dr. Priscilla Ray has set forth her qualifications to render an opinion in this case**

Dr. Ray's qualifications contained on the curriculum vitae include, but are not limited to:

1. Board certified since 1980 by the American Board of Psychiatry and Neurology;

2. Medical Director, Methodist Hospital Psychiatry Unit for the last six years;

3. St. Luke's Episcopal Hospital Vice Chairman Credential's Committee;

4. Baylor College of Medicine – Associate Professor of Psychiatry

5. University of Texas Health Science Center – Clinical Associate Professor

(CR 79-81).

As the current Medical Director, Psychiatry Unit, at The Methodist Hospital, she fully understands and interacts with the workings of the entire department—including the nursing staff. Dr. Ray fully meets the requirements of §74.402 as she

17

manages, guides, and/or orders the entire medical staff at her unit including the nursing staff. As such, she is qualified to "opine" about the standard of care.

Further, Dr. Ray clearly establishes in her report that she is qualified to testify as to a nurses conduct based on the fact she has "worked as a physician in hospitals, including General/Medical-Surgical hospitals, for over 35 years. I am generally familiar with the standards for nurses in caring for patients in terms of behavior and deportment."

Appellant relies on *Tawa* as binding authority to suggest a physician is not qualified to "opine" on the standard of care for a non-physician. Through Defendants' "extension" and not the Court's, Defendants would apply this statement to all non-physicians. Unfortunately, Defendants fail to inform this Court that *Tawa* quotes from *Christus Health Southeast Texas* and concerns a physician attempting to "opine about the hospital's decisions related to the complainant's discharge from long-term care." *Tawa v. Gentry*, No. 01-12-00407, 2013 WL 1684869 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.). Specifically, *Tawa* involves the hierarchy of administrative decisions to "prevent implementation of another physician's order." *Id.* The case at hand is clearly distinguishable as it involves a Doctor commenting on the breach of care involved in a nurse's care of a patient.

**B. Christy Traynor's expert's opinions are not conclusory and meet the requirements of Chapter 74**

Pursuant to *Tawa*, a proper expert report must (1) inform Defendants of the specific conduct that the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *See Tawa v. Gentry*, 01-12-00407-CV, 2013 WL 1694869, at *2 (Tex. App.—Houston [1st Dist.] Apr. 18, 2013, no pet.) (citing *Am. Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)).

In this case, Dr. Miller identifies the standard of care applicable to Nurse Bunyard, Appellant's employee, and identifies his breaches in that regard. In doing so, she cites, in part, to the Texas Board of Nursing Nurse Practice Act. (CR 113-114). In addition, she opines on the conduct of the Appellant and its lack of policies and procedures. She identifies with specificity the Appellant's conduct of which she complains as follows;

1. The organizations were negligent in adequately screening applicants prior to hire as evidenced by lack of pre-hire comprehensive background check.

2. The organizations were negligent in adequately training staff on sexual misconduct, reporting and prevention as evidence by a lack of employee handbook or other training materials prior to the date of incident;

3. The organizations failed to have policy and procedures in charge for the supervision of nursing care as evidence by no record of charge nurse or hose supervisor rounding on Ms. Traynor.

19

4. The organization filed to have adequate policy and procedures in place of the monitoring of telemetry patients, as evidenced by Ms. Traynor being off monitor for 30 minutes or more. The removal of Ms. Traynor from the telemetry monitor coinciding with the time of the nurses'' hourly rounding documentation as evidenced by a) no rhythm strip in medical records for the time and b) "0" showing on the vital signs systems generated vital signs record.

(CR 116-117).

Dr. Miller's expert report explains the standard of care and the basis for her opinions and supports her opinion with facts regarding Appellant's actions.

Appellant relies on *Baylor All Saints Medical Center v. Martin*, to suggest that Dr. Miller's report is insufficient. That expert report at issue in that case, however, is distinguishable. In that case, which also involved a patient who was the subject of mistreatment while recovering from surgery, the expert report under scrutiny offered no detail. Specifically, in that case, the expert report stated simply that "Baylor was expected to adhere to "specific standards of care" for its patients that there must be policies in place to safeguard patients from assault including employing a sufficient number of security personal [sic] to insure that no unauthorized persons assault patients and training staff to identify persons not authorized to enter patients room and prevent them from doing so." *Baylor All Saints Med. Ctr. v. Martin,* 340 S.W. 3d 529, 534 (Tex. App.—Fort Worth, 2011, no pet.). The court held that the report was insufficient because it did not establish what specific polices and safeguards should have been in place. *Id.* at 534.

20

On the other hand, in yet another similar case involving a patient who was the victim of sexual misconduct by a nurse while recovering from surgery, the court found that an expert report that stated the hospital "[f]ailed to provide adequate supervision to the CNA [DeJesus] and the RN [Njoh], [f]ailed to protect Ms. Sanchez from sexual harassment and sexual abuse, and [f]ailed to provide safety to Ms. Sanchez in her immediate post operative [sic] when the CNA lifted Ms. Sanchez up and began dancing with her" met the Chapter 74 standards. *See Christus Spohn Health System Corp. v. Sanchez*, 299 S.W.3d 868, 877 (Tex. App.—Corpus Christi, pet. denied.).

In this case, Dr. Miller has identified five specific acts or omissions of Appellant of which she complains. Accordingly, the report meets the requirements of Chapter 74.

### C. Traynor is not Required to Provide an Expert Report for Each Pleaded Liability Theory

Appellant argues that the Court erred in declining to dismiss this case based on Appellant's allegation that Traynor has not provided an expert report on each theory of liability pled in her petition against Appellant. This argument fails for two reasons. First, Traynor has offered expert opinions on both direct liability and vicarious liability against Appellant. Second, even if she had not, or if one of those opinions were to be found insufficient, the Texas Supreme Court has ruled that "when a health care liability claim involves a vicarious liability theory, either alone

21

or in combination with other theories, an expert report that *meets the statutory standards as to the employee is sufficient* to implicate the employer's conduct under the vicarious theory. And if *any* liability theory has been adequately covered, *the entire case may proceed." Certified EMS, Inc., v. Potts*, 392 S.W.3d 625, 632 (Tex. 2013) (emphasis added).

In *Potts*, which involved claims placed against both the employee and employer in a health care liability claim stated "[n]o provision of the Act requires an expert report to address each alleged liability theory." *Id.* 631. *Potts* opined on the Legislature's intent and this State's application of the Texas Medical Liability Act. Specifically, "[i]f a health care liability claim contains at least one viable liability theory, as evidenced by an expert report meeting the statutory requirements, the claim cannot be frivolous. The Legislature's goal was to deter baseless claim, *not to block earnest ones." Id.* (emphasis added).

*Potts* involved the exact same fact set contained in the present cause—a nurse who sexually molested a patient and a responsible hospital. The Defendant unsuccessfully argued that the "reports omitted any explicit reference to [their] direct liability for [the nurse's] conduct." *Id.* The Texas Supreme Court stated that "[t]o require an expert report for each and every theory would entangle the court and the parties in collateral fights about intricacies of pleadings rather than the merits of a cause of action, creating additional expense and delay as trial and

22

appellate courts parse theories that could be disposed of more simply through other means as the case progresses." *Id.* (citing *Scoresby v. Santillan*, 346 S.W.3d 546, 556 (Tex. 2011) (applying a lenient standard to cure a deficient report, noting that approach avoids the expense and delay of multiple interlocutory appeals and assures a claimant a fair opportunity to demonstrate that his claim is not frivolous).

Appellant attempts to argue, briefing the issue for the first time in this appeal, that Traynor is not entitled to assert a claim for vicarious liability against Appellant, therefore the Court should ignore expert opinions in that regard. In doing so, Appellant attempts to entangle the court in the very sort of collateral fight described by the Texas Supreme Court in *Potts*. Asserting a summary judgment argument regarding vicarious liability, before discovery has even begun, is premature and inappropriate. The fact of the matter is that the issue of whether vicarious liability will ultimately succeed is not before this Court. According to Chapter 74, and *Palacios*, the only issue before the Court at this phase in this proceeding is whether Traynor has presented expert reports which inform the Appellants of the specific conduct that Traynor has called into question and provide a basis for the trial court to conclude that the claims have merit. See *Am. Transitional Care Centers of Texas, Inc. v. Palacios*, 46 S.W.3d 873, 877 (Tex. 2001).

Traynor has done so, and this Court should affirm the trial court's decision denying Appellant's Motion to Dismiss.

**CONCLUSION AND PRAYER**

Respectfully submitted,

**HOULETTE & GRAY P.L.L.C.**

/s/ Jacqueline M. Houlette
**Jacqueline M. Houlette**
TBA No. 00787718
440 Louisiana, Suite 900
Houston, Texas  77002
Telephone:  (713) 236-7740
Facsimile:   (713) 583-3010
jhoulette@houlette-gray.com

**ATTORNEY FOR APPELLEE**

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rules of Appellate Procedure, the undersigned certifies this brief complies with the type-volume limitations of Tex. R. App. P. 9.4.

1. This brief complies with the type-volume limitations of Tex. R. App. P. 9.4 because:

   This brief contains 4720 words, as determined by the computer software's word-count function, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

2. This brief complies with the typeface requirements of Tex. R. App. P. 9.4 because:

   This brief has been prepared in a conventional typeface using Microsoft Word 2013 in 14 pt. Times New Roman (Footnotes in 12 pt.).

\_\_\_/s/Jacqueline M. Houlette_____
**Jacqueline M. Houlette**

25

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellee's Brief was served upon the counsel below via the methods identified below on December 14, 2015.

Joshua C. Anderson                                    *Via Electronic Service*
Horne Rota Moos L.L.P.                                *and E-mail*
2777 Allen Parkway, Suite 1200
Houston, Texas 77019
(713) 333-4500  Telephone
(713) 333-4600  Facsimile

Chastiti N. Horne                                     *Via Electronic Service*
Horne Rota Moos L.L.P.                                *and E-mail*
2777 Allen Parkway, Suite 1200
Houston, Texas 77019
(713) 333-4500  Telephone
(713) 333-4600  Facsimile


_____/s/Jacqueline M. Houlette_____
**Jacqueline M. Houlette**