**Reversed and Remanded and Memorandum Opinion filed December 15, 2016.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-15-00924-CV

_____

**PINNACLE HEALTH FACILITIES XV, LP D/B/A WOODRIDGE NURSING AND REHABILITATION, Appellant**

**V.**

**JORGE ROBLES AND WERNER ROBLES, INDIVIDUALLY AND AS HEIRS OF ZOILA ROBLES, Appellees**

**On Appeal from the 55th District Court
Harris County, Texas
Trial Court Cause No. 2015-11057**

## M E M O R A N D U M   O P I N I O N

Pinnacle Health Facilities XV, LP d/b/a Woodridge Nursing and Rehabilitation ("appellant") appeals from the trial court's denial of its motion to dismiss. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2010). Finding the expert report insufficient, we reverse and remand.

## I. BACKGROUND

Jorge Robles and Werner Robles, individually and as heirs of Zoila Robles, (collectively "appellees") filed a health care liability claim alleging Zoila Robles ("Robles") suffered injuries and died as a result of a faulty sling transfer[1] from her geri-chair[2] to her bed at Woodridge Rehabilitation Center. Pursuant to section 74.351 of the Texas Civil Practices and Remedies Code, appellees served appellant with the expert report of Christopher Davey, M.D. Appellant objected to his original report, prompting appellees to file and serve an amended expert report by Davey. Appellant again objected. In order to obtain a ruling on appellant's objections to allow discovery to proceed, appellees filed a motion to overrule appellant's objections. Following a hearing, the trial judge granted that motion. Appellant then filed a motion to reconsider and motion to dismiss. From the trial court's order denying the motion to dismiss, appellant initiated this interlocutory appeal.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The Texas Medical Liability Act ("the Act") entitles a defendant to dismissal of a health care liability claim if he is not served with an expert report showing that the claim has merit within 120 days of the date suit was filed. Tex. Civ. Prac. & Rem. Code § 74.351(b); *Scoresby v. Santillan,* 346 S.W.3d 546, 549 (Tex. 2011). The trial court's refusal to dismiss may be immediately appealed. Tex. Civ. Prac. & Rem. Code § 51.014(a)(9); *Scoresby,* 346 S.W.3d at 549. We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Jelinek v. Casas,* 328 S.W.3d 526, 539 (Tex. 2010); *Group v.*

---

[1] A technique in which the immobile patient is tucked into a sling, hoisted up by a lift, and transferred from one seating platform to another.

[2] Geriatric "geri-" chairs are adjustable recliners.

2

*Vicento,* 164 S.W.3d 724, 727 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). A trial court abuses its discretion if it acts in an unreasonable or arbitrary manner or without reference to any guiding rules or principles. *Larson v. Downing,* 197 S.W.3d 303, 304-05 (Tex. 2006); *see also Jelinek,* 328 S.W.3d at 539. When reviewing these matters, "a court of appeals may not substitute its own judgment for the trial court's judgment." *Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002). A trial court does not abuse its discretion merely because it decides a discretionary matter differently than an appellate court would in a similar circumstance. *Gray v. CHCA Bayshore L.P.,* 189 S.W.3d 855, 858 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

The Act specifies requirements for an adequate report and mandates "an objective good faith effort to comply" with the requirements. Tex. Civ. Prac. & Rem. Code § 74.351(*l* ), (r)(6); *Van Ness v. ETMC First Physicians,* 461 S.W.3d 140, 141 (Tex. 2015). The report must fairly summarize (1) the applicable standard of care, (2) a breach of that standard, and (3) causation. *See Van Ness,* 461 S.W.3d at 141; Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). Further, a report must provide enough information to fulfill two purposes: (1) inform the defendant of the specific conduct that the plaintiff has called into question, and (2) provide a basis for the trial court to conclude that the claims have merit. *Univ. of Tex. Med. Branch v. Railsback,* 259 S.W.3d 860, 863 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

A court must grant a motion challenging the adequacy of a report if it is not "an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." Tex. Civ. Prac. & Rem. Code § 74.351(*l*). When a report does not fairly summarize the three elements or provide enough information to fulfill the two purposes above, it is not considered an "objective good faith effort" to comply with the statute. *Scoresby,* 346 S.W.3d at 555–56. A report that merely

3

states the expert's conclusions also does not amount to a good faith effort. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001). The expert must explain the basis for his statements and must link his conclusions to the facts. *Jelinek,* 328 S.W.3d at 539. It is not necessary, however, for the plaintiff to assemble all his proof or present evidence in the report as if he were in fact litigating the merits. *Palacios*, 46 S.W.3d at 879.

A "good-faith effort" provides sufficient information to inform the defendant of the specific conduct the plaintiff has called into question and provides a basis for the trial court to conclude that the claims have merit. *Van Ness*, 461 S.W.3d at 141; *Patel v. Williams,* 237 S.W.3d 901, 904 (Tex. App.—Houston [14th Dist.] 2007, no pet.). When determining if a good faith effort has been made, the trial court is limited to the four corners of the report and cannot consider extrinsic evidence. *See Bowie Mem'l Hosp.*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878.

## III.   ANALYSIS

In a single issue, appellant questions whether the trial court erred in denying the motion to dismiss after appellees failed to serve an amended expert report that complies with Chapter 74. *See* Tex. Civ. Prac. & Rem. Code § 74.351(*l*), (r)(6). Specifically, appellant claims the amended expert report failed to provide any specific factual information as to how appellant breached its standards of care and simply assumes a breach occurred by virtue of Robles' fall. Further, appellant contends the amended expert report failed to provide specific information as to how appellant's alleged breaches were a substantial factor in Robles' death.

Davey's report states the Woodridge staff "breached the standard of care by allowing Ms. Robles to sustain a severe fall during her stay. Specifically, the staff at Woodridge failed to utilize proper technique when transferring Ms. Robles with

a transfer lift and failed to provide a sufficient number of adequately trained staff."

Davey then set forth two ways in which the standard of care was breached:

> **1. Failure to utilize proper technique when transferring a resident with a transfer lift.** During a transfer using a lift, the patient is placed within the lift sling.  Thus, the healthcare provider operating the lift has absolute control over the entire lift procedure from placing the patient into the lift swing all the way through successfully transferring the patient. If proper technique is utilized during a transfer — including choosing the correct sling; preparing the patient, lift, and environment for transfer; properly placing the patient in the sling; performing a safety check; and properly lifting and lowering the patient — a patient will not fall from the transfer lift onto the ground. Thus, a healthcare provider has an absolute duty to ensure that the patient does not fall to the ground from a transfer lift. Compliance with the standard of care then fulfills that duty, and the standard of care requires that a facility ensure that proper technique is used every time its employees utilize a transfer lift.
>
> There are numerous improper techniques and errors that can result in a fall during transfer, including: using the incorrect sling; not properly positioning the lift and receiving surface at the correct height; not ensuring that the receiving surface is stable and locked; not ensuring a clear path for the lift transfer from the lift site to the receiving area; not properly placing the patient in the sling; not securing all clips, hooks, and fasteners; allowing straps to become twisted; not ensuring that weight is evenly distributed within the lift; allowing the sling opening to be too small or too large; and not properly positioning the patient over the receiving surface before releasing the lift. Malfunctioning of the equipment itself should never cause a fall if proper transfer technique is used. That is because any equipment malfunctioning will be identified when either the lift is prepared for transfer or when the safety check is performed. Prior to transfer, the caregiver must test the lift controls before bringing the lift to the patient, ensure that the receiving surface it stable and locked, check lift weight limits, and examine the sling and attachment areas for tear, holes, and frayed seams. Slings with any signs of wear should not be used. Additionally, patient non-compliance should never interfere with a lift transfer. Before lifting the patient, the caregiver must make sure that the patient is able to understand and follow instructions and

is ready to be transferred. If a patient is agitated, resistant, or combative, a lift should be avoided. Thus, when proper technique is utilized, fall risks related to equipment malfunction or patient noncompliance are eliminated. Therefore, the only reason a patient would fall onto the ground during the transfer would be as a result of the improper technique of the caregiver.

In the current case, Ms. Robles fell out of the hoyer lift and onto the ground when she was being transferred by the staff at Woodridge from a geri-chair to her bed. . . . Due to the poor documentation of the incident, it is unclear exactly how Ms. Robles fell from the hoyer lift. However, had the proper techniques mentioned above been utilized when transferring Ms. Robles from the geri-chair to her bed using the transfer lift, to a reasonable degree of medical probability, Ms. Robles would not have fallen out of the hoyer lift and onto the floor. This failure of the staff at Woodridge to use proper technique when transferring a resident with a transfer lift is a breach of the standard of care,

**2. Failure to maintain a sufficient number of adequately trained and [sic] staff.** The standard of care mandates that a facility and its nursing staff take the proper precautions to prevent accidents, such as falls, from occurring. Upon admission to Woodridge, Ms. Robles' initial care plan specifically indicated that she had potential for falls and injuries related to assistance with mobility and transfers. . . . Her ADL plan of care also indicated that transfers required a two or more person physical assist and a sling lift. . . . Given these assessments, the staff at Woodridge should have implemented every safety precaution to protect Ms. Robles from falling. This includes providing an adequate number of sufficiently trained staff to assist with transfers. At least two staff members should have been involved in any transfer utilizing the hoyer lift. Any staff members assisting with Ms. Robles' transfers should have been trained on how to safely transfer patients using a hoyer lift. This would include training on all of the aspects of proper technique mentioned above. Staff training has a direct impact on a resident's risk of accident during transfers. An adequate number of staff is also critical to ensure that a transfer lift can be safely operated. Again, Ms. Robles fell out of the hoyer lift and onto the ground when she was being transferred by the staff at Woodridge from a geri-chair to her bed. . . . The utilization of poor technique, as indicated by Ms. Robles' fall out of the hoyer lift and onto the floor,

6

shows that the staff members that transferred Ms. Robles were not sufficiently trained and/or that sufficient staff was not available to safely transfer Ms. Robles. This failure to maintain sufficient number of adequately trained staff is a breach of the standard of care.

Davey's report concludes the standard of care was breached by reason of the fact Robles' fell. His report contains no facts implicating the staff members' conduct. *See Kingwood Pines Hosp., LLC v. Gomez,* 362 S.W.3d 740 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (noting whether the standard of care was breached cannot be determined without specific information about what should have been done differently). This lapse is explained by the fact that "[d]ue to the poor documentation of the incident, it is unclear exactly how Ms. Robles fell from the hoyer lift," but no issue is raised on appeal, and we therefore make no determination, whether the provisions for discovery contained in section 74.351(s)[3] were inadequate to obtain information as to how the staff members' conduct may have breached the standard of care. *See Baylor All Saints Med. Ctr. v. Martin,* 340 S.W.3d 529, 534 (Tex. App.—Fort Worth 2011, no pet.) (citing *Bogar v. Esparza*, 257 S.W.3d 354, 371–72 (Tex. App.—Austin 2008, no pet.) (op. on reh'g) (noting that the plaintiff has the burden to establish that section 74.351's discovery limitations have in fact prevented her from satisfying the statute's expert report requirements and pursuing her claim)).

We therefore conclude appellees' amended expert report was deficient in that it failed to provide a fair summary of the manner in which the care rendered by

---

[3] Subsection (s) provides "Until a claimant has served the expert report and curriculum vitae as required by Subsection (a), all discovery in a health care liability claim is stayed except for the acquisition by the claimant of information, including medical or hospital records or other documents or tangible things, related to the patient's health care through: (1) written discovery as defined in Rule 192.7, Texas Rules of Civil Procedure; (2) depositions on written questions under Rule 200, Texas Rules of Civil Procedure; and (3) discovery from nonparties under Rule 205, Texas Rules of Civil Procedure."

the health care provider failed to meet the applicable standard of care. *See* Tex. Civ. Prac. & Rem. Code § 74.351(r)(6). Further, because the expert report fails to inform appellee of the specific conduct that appellants have called into question, appellees' amended expert report does not represent an objective "good-faith effort" to comply with the requirements of section 74.351(r)(6). *See* Tex. Civ. Prac. & Rem. Code § 74.351(*l*), (r)(6). Because the amended expert report fails to connect the health care provider's conduct to Robles' fall, it fails to satisfy the minimal standard and is not subject to cure. *But see St. Luke's Sugar Land Hosp. v. Joseph*, No. 14-11-00932-CV, 2012 WL 2860687, at *8 (Tex. App.—Houston [14th Dist.] July 12, 2012, no pet.) (mem. op.) (reversing and remanding for a determination of whether to grant a thirty-day extension to cure the deficiencies in the expert's report where the report implicated the doctor's conduct); *Ezekiel v. Shorts*, No. 14-12-00305-CV, 2013 WL 119712, at *3-5 (Tex. App.—Houston [14th Dist.] Jan. 10, 2013, no pet.) (mem. op.) (same). Accordingly, we sustain appellant's issue and hold the trial court erred in denying appellant's motion to dismiss.

## IV. CONCLUSION

We reverse the trial court's order denying appellant's motion to dismiss. We remand the cause to the trial court for the determination of attorney's fees, *see* Tex. Civ. Prac. & Rem. Code § 74.351(b)(1), and for entry of a final order dismissing appellees' claims against appellant.


/s/    John Donovan
        Justice


Panel consists of Justices Busby, Donovan, and Wise.

8